■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v J.J. YELLEN, Appellant. [815 NYS2d 354]—

Carpinello, J. Appeal from a judgment of the County Court of Schoharie County (Bartlett, III, J.), rendered August 9, 2003, upon a verdict convicting defendant of the crime of reckless endangerment in the first degree.

In the early morning hours of February 18, 2002, the police were summoned to defendant's Schoharie County residence where his girlfriend (hereinafter the victim) was found bleeding on a bed. According to the victim, after a night of excessive drinking by both of them, defendant became enraged and repeatedly stabbed and punched her. During the course of the morning, according to the victim, a gun was discharged near to where she was lying injured on the floor and defendant also forced her to engage in oral sex with him. Defendant was thereafter charged by indictment with numerous crimes, including attempted murder, assault, sodomy, criminal use of a firearm and reckless endangerment. Following a jury trial, he was acquitted of all counts except reckless endangerment in the first

degree.[1] Sentenced to a prison term of 2 to 6 years, he now appeals. We affirm.

Reckless endangerment in the first degree requires proof that "under circumstances evincing a depraved indifference to human life, [one] recklessly engages in conduct which creates a grave risk of death to another person" (Penal Law § 120.25). Defendant claims that his reckless endangerment conviction was not established by legally sufficient evidence because the People failed to establish that he himself actually fired a weapon at the victim that morning. We are satisfied, upon reviewing the evidence in a light most favorable to the People, that there is a "valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial" (*People v Bleakley*, 69 NY2d 490, 495 [1987]), namely, that a shotgun was indeed discharged that morning by defendant.[2]

Evidence at trial established that the victim heard two shots fired as she was lying injured on the floor in the living room. One of the shots, according to her testimony, was "very close to [her]." While there can be little doubt that the victim's credibility was seriously undermined on cross-examination, her claim that these shots were fired in her direction was corroborated by other evidence. First, upon arriving at the scene, the police observed a shotgun leaning against a couch in the living room. Defendant's DNA was thereafter determined to be on the receiver of the shotgun in the area of its trigger. Further-

1. Although a third person was present for this entire scenario, he could not be located for trial.

2. To the extent that defendant also claims that his conviction was not established by legally sufficient evidence because the People failed to prove that the victim was ever in grave risk of death, same was not properly preserved by a motion to dismiss at the close of proof on this specific ground (*see People v Gray*, 86 NY2d 10, 19 [1995]). We decline to reverse defendant's conviction in the interest of justice on this ground since even if one's conduct does not result in another being injured or killed, it may still have created a grave risk of death to that person (*see People v Robinson*, 16 AD3d 768, 770 [2005], *lv denied* 4 NY3d 856 [2005]). In our view, defendant's conduct in twice discharging a shotgun inside the house near where the victim was lying injured on the floor created a grave risk of death to her even though she was never actually hit with a bullet (*see People v Wisdom*, 23 AD3d 759 [2005], *lv denied* 6 NY3d 840 [2006]; *People v Graham*, 14 AD3d 887, 889 [2005], *lv denied* 4 NY3d 853 [2005]; *People v Teets*, 293 AD2d 766, 767 [2002], *lv denied* 100 NY2d 543 [2003]; *People v Jones*, 269 AD2d 799 [2000], *lv denied* 95 NY2d 854 [2000]; *People v Jerome*, 138 AD2d 871, 872 [1988]; *People v Menard*, 113 AD2d 972, 973 [1985], *lv denied* 68 NY2d 772 [1986]; *see also People v Lynch*, 95 NY2d 243, 247 [2000]; *People v Tuck*, 87 NY2d 828, 830 [1995]; *People v Chrysler*, 85 NY2d 413, 415-416 [1995]; *People v Davis*, 72 NY2d 32, 36-37 [1988]).

more, two shotgun shells were retrieved from the living room of the residence and shotgun wadding was retrieved from the kitchen. A firearms examiner testified that these shells came from the shotgun retrieved from the residence.

Police also observed a hole in the living room floor near where the victim indicated that she was lying and this hole was determined by a forensic crime scene police investigator to have been caused by a shotgun blast. Similar shotgun holes were found in a kitchen cupboard. In our view, this evidence was sufficient to establish that defendant indeed fired at least two shots inside his home that night, one of which came in close proximity to the victim (*compare People v King,* 265 AD2d 678, 679 [1999], *lv denied* 94 NY2d 904 [2000]).

Defendant's remaining contentions, including those contained in his pro se brief, have been reviewed and found to be unpersuasive.

Mercure, J.P., Peters, Mugglin and Rose, JJ., concur. Ordered that the judgment is affirmed.